**IN THE UNITED STATES DISTRICT
COURT FOR THE WESTERN DISTRICT OF
MISSOURI**

| | | |
|---|---|---|
| **BBMS, LLC d/b/a ALL A' BLOOM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | **Case No.** |
| | ) | |
| **CONTINENTAL CASUALTY COMPANY,** | ) | |
| <u>Serve at</u>: | ) | |
| **Director** | ) | |
| **Department of Insurance** | ) | |
| **301 West High Street** | ) | |
| **Room 530** | ) | |
| **Jefferson City, MO  65101** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**CLASS ACTION COMPLAINT**</u>

Plaintiff BBMS, LLC d/b/a All A' Bloom ("BBMS" or "Plaintiff"), on behalf of itself and

all others similarly situated, submits this Class Action Complaint against Defendant Continental

Casualty Company ("Continental" or "Defendant") and states and alleges as follows:

<u>**PARTIES**</u>

1.      Plaintiff BBMS is a Missouri limited liability company that owns and operates a

flower shop in Lee's Summit, Jackson County, Missouri under the name All A' Bloom.

2.      Defendant Continental is an Illinois company with its principal place of business in

Chicago, Illinois.  Continental is authorized to write, sell and issue insurance policies providing

property and business income coverage in Missouri.  At all times herein relevant, Continental wrote,

sold and issued insurance policies in Missouri, including the policy at issue in this lawsuit.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because BBMS and Continental are citizens of different states and the amount in controversy is believed to exceed $75,000 exclusive of interest and costs.

4.     Venue is proper in this judicial district under 28 U.S.C. § 1391 because BBMS resides in this judicial district and because a substantial portion of the acts and conduct giving rise to the claims occurred in this judicial district.

## GENERAL FACTS

5.     In 2017, Barbara Keller purchased the All A' Bloom flowers and gifts in Lee's Summit, Missouri. Ms. Keller had worked in the health care industry and was looking for a business outside of health care.

6.     All A' Bloom had been in business since 2006 and the financial records showed the business was profitable.

7.     Rather than owning and operating All 'A Bloom as a sole proprietorship, Ms. Keller formed BBMS to be the owner and operator of that business.

8.     The current retail location of All 'A Bloom is SE 3rd Street, Lee's Summit, MO 64063. In addition to a retail shop, there is a design studio on the premises. BBMS sells and designs arrangements for special events such as weddings, funerals, and proms. BBMS also sells flower arrangements online through its website.

9.     In 2019, BBMS's business grew by 54%. BBMS expected and was beginning to realize continued growth in 2020. BBMS experienced an 80% increase in revenue on Valentine's Day 2020 compared with Valentine's Day 2019.

10.     Unfortunately, BBMS's operations have been and continue to be disrupted by government restrictions related to the novel coronavirus, SARS-CoV-2, which causes the infectious

disease COVID-19.

11.     COVID-19 first appeared in late 2019.

12.     COVID-19 is a highly contagious virus that has rapidly spread and continues to spread across the globe.  It can cause severe respiratory distress and even death.

13.     COVID-19 is spread by a number of methods, including "community spread," meaning that some people have been infected and it is not known how or where they became exposed. Public health authorities, including the CDC, have reported significant ongoing community spread of the virus including instances of community spread in all 50 states.

14.     The CDC has reported that a person can be become infected with COVID-19 by touching a surface or object (like a fork, plate, table, or chair) that has the virus on it, and then touching their own mouth, nose or eyes.

15.     COVID-19 has been declared a pandemic by the World Health Organization.

16.     The COVID-19 pandemic is a public health crisis that has profoundly impacted American society, including the public's ability to patronize restaurants, bars and retail stores.

17.     Many state and local governments have issued stay-at-home orders to slow the spread of COVID-19.

18.     Jackson County, Missouri issued a stay-at-home order on March 24, 2020.

19.     On April 16, 2020, Jackson County extended the stay-at-home order until May 15, 2020.

20.      Under the order, "[a]ll businesses with a facility in the County, except Essential Businesses, as defined in Section 14.f, are required to cease all activities at facilities located within the County except Minimum Basic Operations, as defined in Section 14.g"

21.     On April 3, 2020, the State of Missouri issued a stay-at-home order that limited access to businesses and closed schools.

22.     The virus and stay-at-home orders have resulted in significant losses for businesses due to direct closures as well as closures of dependent businesses.

23.     For instance, BBMS is facing a supply shortage due to many flowers used in its business being grown in the states of California and Washington and the country of Mexico. BBMS also has lost physical use of its retail shop. And weddings, funerals, and proms have been canceled due to COVID-19 and the stay-at-home orders.

24.     Many other businesses have found themselves in similar positions.

25.     BBMS purchased an "all risk" insurance policy from Continental identified as Policy No. B 6021741723 ("the Policy") and attached hereto as Exhibit A. An "all risk" policy differs from a named peril policy in that an "all risk" policy will cover any and all risks unless specifically excluded.

26.     The Policy period is December 1, 2019 to December 1, 2020.

27.     BBMS paid all necessary premiums.

28.     The Policy was in full force and effect when BBMS notified Continental of its losses.

29.     The Policy includes coverage for Business Income, Extra Expense, Civil Authority, Sue and Labor, and Dependent Properties coverages.

30.     This is clear from the declarations page of the Policy which indicates "Business Income and Extra Expense" and "Business Income and Extra Expense – Dependent Properties" coverages are available.

31.      The Special Property Coverage Form states:

> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from a Covered Cause of Loss.

32.     The Policy defines "Covered Causes of Loss" as "Risks of Direct Physical Loss unless the loss is: a. Excluded in Section B. Exclusions; b. Limited in paragraph A.4. Limitations; or Excluded or limited by other provisions of this policy."

33. The Policy has no exclusion for viruses or pandemics.

34. Continental has agreed to pay for loss "Business Income" Plaintiff BMMS sustains due to the necessary "suspension" of its operations during the "period of restoration."

35. Continental has agreed to pay for the reasonable and necessary expenses Plaintiff BMMS has incurred during the "period of restoration" that Plaintiff would not have incurred if there were no direct physical loss or damage to BMMS's property.

36. Continental has agreed to pay for the loss of Business Income and Extra Expense Plaintiff BMMS has incurred due to the suspension of its operations during the "period of restoration" due to a direct physical loss or damage to a Dependent Property.

37. Dependent Property means property operated by other whom the insured depend on to: a. Deliver material for services, to the insured or to other for the insured's account, b. Accept the insured's products or services, c. Manufacture products for delivery to insured's customers under contract of sale (Manufacturing Locations), or d. Attract customers to the insured's business.

38. Under the terms of the Policy, Continental must provide coverage under for Business Income, Extra Expense, Civil Authority, Sue and Labor, and Dependent Properties coverages.

## CLASS ACTION ALLEGATIONS

39. BBMS brings this action on behalf of itself and all other similarly situated businesses pursuant to Rule 23(b) of the Federal Rules of Civil Procedure and seeks to represent the following classes:

a. All persons and entities that: (a) had Business Income coverage under a property insurance policy issued by Defendant; (b) suffered a suspension of business related to COVID-19, at the premises covered by their Continental property insurance policy; (c) made a claim under their property insurance policy issued by Defendant; and (d) were denied Business Income coverage by Defendant for the suspension of business

resulting from the presence or threat of COVID-19 (the "Business Income Breach Class").

b.     All persons and entities that: (a) had Civil Authority coverage under a property insurance policy issued by Defendant; (b) suffered loss of Business Income and/or Extra Expense caused by action of a civil authority; (c) made a claim under their property insurance policy issued by Defendant; and (d) were denied Civil Authority coverage by Defendant for the loss of Business Income and/or Extra Expense caused by a stay-at-home order (the "Civil Authority Breach Class").

c.     All persons and entities that: (a) had Extra Expense coverage under a property insurance policy issued by Defendant; (b) sought to minimize the suspension of business in connection with COVID-19 at the premises covered by their Continental property insurance policy; (c) made a claim under their property insurance policy issued by Defendant; and (d) were denied Extra Expense coverage by Defendant despite their efforts to minimize the suspension of business caused by COVID-19 (the "Extra Expense Breach Class").

d.     All persons and entities that: (a) had a Sue and Labor provision under a property insurance policy issued by Defendant; (b) sought to prevent property damage caused by COVID-19 by suspending or reducing business operations, at the premises covered by their Continental property insurance policy; (c) made a claim under their property insurance policy issued by Defendant; and (d) were denied Sue and Labor coverage by Defendant in connection with the suspension of business caused by COVID-19 (the "Sue and Labor Breach Class").

e.     All persons and entities that: (a) had a Dependent Property provision under a property insurance policy issued by Defendant; (b) sought to prevent property damage caused

by COVID-19 by suspending or reducing business operations, at the premises covered by their Continental property insurance policy; (c) made a claim under their property insurance policy issued by Defendant; and (d) were denied Dependent Property coverage by Defendant in connection with the suspension of business caused by COVID-19 (the "Dependent Property Breach Class").

f.     All persons and entities with Business Income coverage under a property insurance policy issued by Defendant that suffered a suspension of business due to COVID-19 at the premises covered by the business income coverage (the "Business Income Declaratory Judgment Class").

g.     All persons and entities with Civil Authority coverage under a property insurance policy issued by Defendant that suffered loss of Business Income and/or Extra Expense caused by a stay-at-home order (the "Civil Authority Declaratory Judgment Class").

h.     All persons and entities with Extra Expense coverage under a property insurance policy issued by Defendant that sought to minimize the suspension of business in connection with COVID-19 at the premises covered by their Continental property insurance policy (the "Extra Expense Declaratory Judgment Class").

i.     All persons and entities with a Sue and Labor provision under a property insurance policy issued by Defendant that sought to prevent property damage caused by COVID-19 by suspending or reducing business operations, at the premises covered by their Continental property insurance policy (the "Sue and Labor Declaratory Judgment Class").

j.     All persons and entities with Dependent Property coverage under a property insurance policy issued by Continental that suffered a suspension of business due to COVID-19

at the premises covered by the business income coverage (the "Dependent Property Declaratory Judgment Class").

40. Excluded from each defined class is Defendant and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Court staff assigned to this case and their immediate family members.

41. BBMS reserves the right to modify or amend each of the class definitions, as appropriate, during the course of this litigation. In particular, BBMS reserves the right to seek certification of classes exclusively comprised of persons and entities located within the State of Missouri.

42. Each putative class as defined herein is so numerous that joinder of all its members is impracticable.

43. This action involves questions of law or fact which are common to each of the putative classes. These common questions include but are not limited to the following:

a. whether Continental's Business Income coverage applies to a suspension of business caused by COVID-19;

b. whether Continental's Extra Expense coverage applies to efforts to minimize a loss caused by COVID-19;

c. whether Continental's Civil Authority coverage applies to a loss of Business Income and Extra Expense sustained caused by the orders of state governors requiring the suspension of businesses as a result of COVID-19;

d. whether Continental's Sue and Labor provision applies to require Cincinnati to pay for efforts to reduce damage caused by COVID-19;

e. whether Continental's Dependent Properties provision applies to losses at dependent properties due to COVID that have caused a suspension of business at a covered

property;

f. whether Continental breached its contracts of insurance through a blanket denial of all claims based on business interruption, income loss related to COVID-19 and the related closures; and

g. whether Plaintiff and the class are entitled to an award of reasonable attorney fees, interest and costs.

44. Plaintiff's claims are typical of the claims of each of the members of the putative classes. Plaintiff and the other putative class members were similarly affected by Continental's refusal to pay under its Business Income, Extra Expense, Civil Authority, Sue and Labor and Dependent Property coverages. Plaintiff's claims are based upon the same legal theories as those of the other class members. Plaintiff and the other class members sustained damages as a direct and proximate result of the same wrongful practices in which Continental engaged.

45. Plaintiff is an adequate class representative because it is a member of each of the classes it seeks to represent. and its interests do not conflict with the interests of the other class members. Additionally, Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. The interests of the class as defined here will be fairly and adequately protected by Plaintiff and its counsel.

46. These putative classes can be properly certified under Rule 23(b)(1) because Plaintiff seeks to define the nature and scope of Continental's Business Income, Extra Expense, Civil Authority, and Sue and Labor coverages. The prosecution of separate actions by individual members of the classes would create an immediate risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Continental. Moreover, the adjudications sought by Plaintiff could, as a practical matter, substantially impair or impede the ability of other class members, who are not parties to this action, to protect their interests.

47.     These putative classes can be properly certified under Rule 23(b)(2) because Continental acted or refused to act on grounds generally applicable to plaintiff the other class members, thereby making appropriate final injunctive relief and declaratory relief as described herein.

48.     These putative classes can be properly certified under Rule 23(b)(3) because class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.  Moreover, the common issues described herein predominate over any individual issues that may exist.

## CLAIMS FOR RELIEF

### COUNT I: BREACH OF CONTRACT – BUSINESS INCOME COVERAGE
#### (Claim Brought on Behalf of the Business Income Breach Class)

49.     Plaintiff incorporates the forgoing allegations as if fully set forth herein.

50.     Plaintiff brings this Count individually and on behalf of the other members of the Business Income Breach Class.

51.     Plaintiff's Continental policy, as well as those of the other Business Income Breach  class members, are contracts under which Defendant was paid premiums in exchange for its  promise to pay Plaintiff and the other Business Income Breach Class members' losses for claims  covered by the policy.

52.     In the Special Property Coverage Form, Defendant agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary suspension of its operations during  the "period of restoration."

53.     A "partial or complete cessation" of business activities at the Covered Property is a "suspension" under the policy, for which Defendant agreed to pay for loss of Business Income during the "period of restoration" "that occurs within 12 consecutive months after the date of direct physical loss or damage."

54.     "Business Income" means net income (or loss) before tax that Plaintiff and the other Business Income Breach Class members would have earned "if no physical loss or damage had occurred."

55.     COVID-19 caused direct physical loss and damage to Plaintiff's and the other Business Income Breach Class members' Covered Properties, requiring suspension of operations at the Covered Properties. Losses caused by COVID-19 thus triggered the Business Income provision of Plaintiff and the other Business Income Breach Class members' Continental policies.

56.     Plaintiff and the other Business Income Breach Class members have complied with all applicable provisions of their policies and/or those provisions have been waived by Defendant or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

57.     By denying coverage for any Business Income losses incurred by Plaintiff and the other Business Income Breach Class members in connection with the COVID-19 pandemic, Defendant has breached its coverage obligations under the Policies.

58.     As a result of Defendant's breaches of the Policies, Plaintiff and the other Business Income Breach Class members have sustained substantial damages for which Defendant is liable in an amount to be established at trial.

### COUNT II: BREACH OF CONTRACT – CIVIL AUTHORITY COVERAGE
#### (Claim Brought on Behalf of the Civil Authority Breach Class)

59.     Plaintiff incorporates the forgoing allegations as if fully set forth herein.

60.     Plaintiff brings this Count individually and on behalf of the other members of the Civil Authority Breach Class.

61.     Plaintiff's Continental policy, as well as those of the other Civil Authority Breach Class members, are contracts under which Defendant was paid premiums in exchange for its promise to pay Plaintiff's and the other Civil Authority Breach Class members' losses for claims covered by the policy.

62.     Defendant promised to "pay for the actual loss of Business Income" sustained "and any Extra Expense caused by action of civil authority that prohibit access to" the Covered Property when a Covered Cause of Loss causes damage to property other than the Covered Property and the civil authority takes its action "in response to dangerous physical conditions."

63.     The stay-at-home orders triggered the Civil Authority provision under Plaintiff's and  the other members of the Civil Authority Breach Class's Continental insurance policies.

64.     Plaintiff and the other members of the Civil Authority Breach Class have complied with all applicable provisions of the Policies, and/or those provisions have been waived by Defendant or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

65.     By denying coverage for any business losses incurred by Plaintiff and other members of the Civil Authority Breach Class in connection with the stay-at-home orders and the  COVID-19 pandemic, Defendant has breached its coverage obligations under the Policies.

66.     As a result of Defendant's breaches of the Policies, Plaintiff and the other members of the Civil Authority Breach Class have sustained substantial damages for which Defendant is liable in an amount to be established at trial.

## COUNT III: BREACH OF CONTRACT – EXTRA EXPENSE COVERAGE
### (Claim Brought on Behalf of the Extra Expense Breach Class)

67. Plaintiff incorporates the forgoing allegations as if fully set forth herein.

68. Plaintiff brings this Count individually and on behalf of the other members of the Extra Expense Breach Class.

69. Plaintiff's Continental insurance policy, as well as those of the other Extra Expense Breach Class members, are contracts under which Defendant was paid premiums in exchange for its promise to pay Plaintiff and the other Extra Expense Breach Class members' losses for claims covered by the policy.

70. In the Special Property Coverage Form, Defendant agreed to pay necessary Extra Expense that its insureds incur during the "period of restoration" that the insureds would not have incurred if there had been no direct physical loss or damage to the Covered Property.

71. "Extra Expense" means expenses "reasonable and necessary expenses you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss of or damage to property caused by or resulting from a "Covered Cause of Loss."' and also includes expenses "to repair or replace property."

72. Due to COVID-19 and the stay-at-home orders, Plaintiff and the other members of the Extra Expense Breach Class incurred Extra Expense at Covered Property.

73. Plaintiff and the other members of the Extra Expense Breach Class have complied with all applicable provisions of the Policies and/or those provisions have been waived by Defendant or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

74. By denying coverage for any business losses incurred by Plaintiff and the other members of the Extra Expense Breach Class in connection with the stay-at-home orders and the COVID-19 pandemic, Defendant has breached its coverage obligations under the Policies.

75.     As a result of Defendant's breaches of the Policies, Plaintiff and the other members of the Extra Expense Breach Class have sustained substantial damages for which Defendant is liable in an amount to be established at trial.

## COUNT IV: BREACH OF CONTRACT – SUE AND LABOR COVERAGE
### (Claim Brought on Behalf of the Sue and Labor Breach Class)

76.     Plaintiff incorporates the forgoing allegations as if fully set forth herein.

77.     Plaintiff brings this Count individually and on behalf of the other members of the Sue and Labor Breach Class.

78.     Plaintiff's Continental policy, as well as those of the other Sue and Labor Breach Class members, are contracts under which Defendant was paid premiums in exchange for its promise to pay Plaintiff and the other Sue and Labor Breach Class members' losses for claims covered by the policy.

79.     In the Special Property Coverage Form, Defendant agreed to give due consideration in settlement of a claim to expenses incurred in taking all reasonable steps to protect Covered Property from further damage.

80.     In complying with the stay-at-home orders and otherwise suspending or limiting operations, Plaintiff and other members of the Sue and Labor Breach Class incurred expenses in connection with reasonable steps to protect Covered Property.

81.     Plaintiff and the other members of the Sue and Labor Breach Class have complied with all applicable provisions of the policy and/or those provisions have been waived by Defendant, or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms.

82.     By denying coverage for any Sue and Labor expenses incurred by Plaintiff and the other members of the Sue and Labor Breach Class in connection with the stay-at-home orders and

the COVID-19 pandemic, Defendant has breached its coverage obligations under the Policies.

83.     As a result of Defendant's breaches of the policies, Plaintiff and the other members of the Sue and Labor Breach Class have sustained substantial damages for which Defendant is liable in an amount to be established at trial.

## COUNT V: BREACH OF CONTRACT – BUSINESS INCOME AND EXTRA EXPENSE – DEPENDENT PROPERTY
### (Claim Brought on Behalf of the Dependent Property Breach Class)

84.     Plaintiff incorporates the forgoing allegations as if fully set forth herein.

85.     Plaintiff brings this Count individually and on behalf of the other members of the Dependent Property Breach Class.

86.     Plaintiff's Continental policy and the Continental policies of other Dependent Property Breach Class members are contracts under which Continental was paid premiums in exchange for its promise to pay Plaintiff and the other Dependent Property Breach Class members' losses for claims covered by the policy.

87.     In the Business Income and Extra Expense - Dependent Property Coverage Form, Continental agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration" caused by direct loss to "dependent property" caused by a covered cause of loss.

88.     In the Building and Personal Property Coverage Form and Business Income and Extra Expense - Dependent Property Coverage Form, Continental also agreed to pay necessary Extra Expense that its insureds incur during the "period of restoration" that the insureds would not have sustained if there had been no direct loss to property of a dependent property caused by or resulting from a Covered Cause of Loss.

89.     "Extra Expense" includes expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property

90.     "Business Income" means net income (net profit or loss before income taxes) that would have been earned or incurred and continuing normal operating expenses sustained, including payroll.

91.     A "partial or complete cessation" of business activities at the Covered Property is a "suspension" under the policy, for which Continental agreed to pay for loss of Business Income during the "period of restoration" that begins at the time of direct loss.

92.     "Dependent Property" means property operated by others whom the insured depends on to: a. Deliver material for services, to the insured or to other for the insured's account, b. Accept the insured's products or services, c. Manufacture products for delivery to insured's customers under contract of sale (Manufacturing Locations), or d. Attract customers to the insured's business.

93.     COVID-19 caused direct physical loss of or damage to dependent property that caused suspension of operations at Plaintiff and the other Dependent Property Breach Class members' Covered Properties. Losses caused by COVID-19 thus triggered the Business Income and Extra Expense – Dependent Property provision of Plaintiff and the other Dependent Property Breach Class members' Continental policies.

94.     Plaintiff and the other Business Income from Dependent Property Breach Class members have complied with all applicable provisions of the policies and yet Continental failed and refused to provide coverage as the policies require.  Instead, on information and belief, Continental made the corporate-level business decision to uniformly deny claims related to COVID-19 without individual bases or investigations.

95.     By denying coverage for any Business Income losses incurred by Plaintiff and the other Dependent Property Breach Class members in connection with the COVID-19 pandemic, Continental has breached its coverage obligations under the policies.

96.     As a result of Continental's breaches of the policies, Plaintiff and the other

Dependent Property Breach Class members have sustained substantial damages for which Continental is liable, in an amount to be proven at trial.

### COUNT VI: DECLARATORY JUDGMENT – BUSINESS INCOME COVERAGE
**(Claim Brought on Behalf of the Business Income Declaratory Judgment Class)**

97.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

98.     Plaintiff brings this Count individually and on behalf of the other members of the Business Income Declaratory Judgment Class.

99.     Plaintiff's Continental policy, as well as those of the other Business Income Declaratory Judgment Class members, are contracts under which Defendant was paid premiums in exchange for its promise to pay Plaintiff and the other Business Income Declaratory Judgment Class members' losses for claims covered by the Policy.

100.    Plaintiff and the other Business Income Declaratory Judgment Class members have complied with all applicable provisions of the Policies and/or those provisions have been waived by Defendant or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff is entitled.

101.    Defendant has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

102.    An actual case or controversy exists regarding Plaintiff's and the other Business Income Declaratory Judgment Class members' rights and Defendant's obligations under the Policies to reimburse Plaintiff for the full amount of Business Income losses incurred by Plaintiff and the other Business Income Declaratory Judgment Class members in connection with suspension of their businesses stemming from the COVID-19 pandemic.

103.     Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Business Income Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

　　　　a.     Plaintiff's and the other Business Income Declaratory Judgment Class members' Business Income losses incurred in connection with the stay-at-home orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their Policies; and

　　　　b.     Defendant is obligated to pay Plaintiff and the other Business Income Declaratory Judgment Class members for the full amount of the Business Income losses incurred and to be incurred in connection with the stay-at-home orders during the period of restoration and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

**COUNT VII: DECLARATORY JUDGMENT – CIVIL AUTHORITY COVERAGE**
**(Claim Brought on Behalf of the Civil Authority Declaratory Judgment Class)**

104.      Plaintiff incorporates the forgoing allegations as if fully set forth herein.

105.     Plaintiff brings this Count individually and on behalf of the other members of the Civil Authority Declaratory Judgment Class.

106.     Plaintiff's Continental policy, as well as those of the other Civil Authority Declaratory Judgment Class members, are contracts under which Defendant was paid premiums in exchange for its promise to pay Plaintiff and the other Civil Authority Declaratory Judgment Class members' losses for claims covered by the Policy.

107.     Plaintiff and the other Civil Authority Declaratory Judgment Class members have complied with all applicable provisions of the Policies and/or those provisions have been waived by Defendant or Defendant is estopped from asserting them, and yet Defendant has abrogated its

insurance coverage obligations pursuant to the Policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff is entitled.

108.     Defendant has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

109.     An actual case or controversy exists regarding Plaintiff's and the other Civil Authority Declaratory Judgment Class members' rights and Defendant's obligations under the Policies to reimburse Plaintiff and the other Civil Authority Declaratory Judgment Class members for the full amount of covered Civil Authority losses incurred by Plaintiff and the other Civil Authority Declaratory Judgment Class members in connection with stay-at-home orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

110.     Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Civil Authority Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

    a.     Plaintiff's and the other Civil Authority Declaratory Judgment Class members' Civil Authority losses incurred in connection with the stay-at-home orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their Policies; and

    b.     Defendant is obligated to pay Plaintiff and the other Civil Authority Declaratory Judgment Class members the full amount of the Civil Authority losses incurred and to be incurred in connection with the covered losses related to the stay-at-home orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic

## COUNT VIII: DECLARATORY JUDGMENT – EXTRA EXPENSE
## COVERAGE
### (Claim Brought on Behalf of the Extra Expense Declaratory Judgment Class)

111.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

112.    Plaintiff brings this Count individually and on behalf of the other members of the
Extra Expense Declaratory Judgment Class.

113.    Plaintiff's Continental insurance policy, as well as those of the other Extra Expense
Declaratory Judgment Class members, are contracts under which Defendant was paid premiums in
exchange for its promise to pay Plaintiff and the other Extra Expense Declaratory Judgment Class
members' losses for claims covered by the Policy.

114.    Plaintiff and the other Extra Expense Declaratory Judgment Class members have
complied with all applicable provisions of the Policies and/or those provisions have been waived by
Defendant or Defendant is estopped from asserting them, and yet Defendant has abrogated its
insurance coverage obligations pursuant to the Policies' clear and unambiguous terms and has
wrongfully and illegally refused to provide coverage to which Plaintiff is entitled.

115.    Defendant has denied claims related to COVID-19 on a uniform and class wide
basis, without individual bases or investigations, such that the Court can render declaratory
judgment irrespective of whether members of the Class have filed a claim.

116.    An actual case or controversy exists regarding Plaintiff's and the other Extra
Expense Declaratory Judgment Class members' rights and Defendant's obligations under the
Policies to reimburse Plaintiff and the other Extra Expense Declaratory Judgment Class members
for the full amount of Extra Expense losses incurred by Plaintiff in connection with stay-at-home
orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

117.    Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Extra Expense Declaratory
Judgment Class members seek a declaratory judgment from this Court declaring the following:

a. Plaintiff's and the other Extra Expense Declaratory Judgment Class members' Extra Expense losses incurred in connection with the stay-at-home orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their Policies; and

b. Defendant is obligated to pay Plaintiff and the other Extra Expense Declaratory Judgment Class members for the full amount of the Extra Expense losses incurred and to be incurred in connection with the covered losses related to the stay-at-home orders during the period of restoration and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

## COUNT IX: DECLARATORY JUDGMENT – SUE AND LABOR COVERAGE
### (Claim Brought on Behalf of the Sue and Labor Declaratory Judgment Class)

118. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

119. Plaintiff brings this Count individually and on behalf of the other members of the Sue and Labor Declaratory Judgment Class.

120. Plaintiff's Continental insurance policy, as well as those of the other Sue and Labor Declaratory Judgment Class members, are contracts under which Defendant was paid premiums in exchange for its promise to pay Plaintiff and the other Sue and Labor Declaratory Judgment Class members' reasonably incurred expenses to protect Covered Property.

121. Plaintiff and the other Sue and Labor Declaratory Judgment Class members have complied with all applicable provisions of the policies and/or those provisions have been waived by Defendant, or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff is entitled.

122.    Defendant has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

123.    An actual case or controversy exists regarding Plaintiff and the other Sue and Labor Declaratory Judgment Class members' rights and Defendant's obligations under the policies to reimburse Plaintiff and the other Sue and Labor Declaratory Judgment Class members for the full amount Plaintiffs and the other members of the Sue and Labor Declaratory Judgment Class reasonably incurred to protect Covered Property from further damage by COVID-19.

124.    Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Sue and Labor Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

  a.    Plaintiff and the other Sue and Labor Declaratory Judgment Class members reasonably incurred expenses to protect Covered Property from further damage by COVID-19 are insured losses under their policies; and

  b.    Defendant is obligated to pay Plaintiff and the other Sue and Labor Declaratory Judgment Class members for the full amount of the expenses they reasonably incurred to protect Covered Property from further damage by COVID-19.

### COUNT X: DECLARATORY JUDGMENT – BUSINESS INCOME AND EXTRA EXPENSE – DEPENDENT PROPERTY
### (Claim Brought on Behalf of the Dependent Property Declaratory Judgment Class)

125.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

126.    Plaintiff brings this Count individually and on behalf of the other members of the Dependent Property Declaratory Judgment Class.

127.    Plaintiff's Continental policy and the Continental policies of other Dependent Property Breach Class members are contracts under which Continental was paid premiums in

exchange for its promise to pay Plaintiff and the other Dependent Property Breach Class members' losses for claims covered by the policy.

128.     In the Business Income and Extra Expense - Dependent Property Coverage Form, Continental agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration" caused by direct loss to "dependent property" caused by a covered cause of loss.

129.     In the Building and Personal Property Coverage Form and Business Income and Extra Expense - Dependent Property Coverage Form, Continental also agreed to pay necessary Extra Expense that its  insureds incur during the "period of restoration" that the insureds would not have sustained if  there had been no direct loss to property of a dependent property caused by or resulting from a Covered Cause of Loss.

130.     "Extra Expense" includes expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property

131.     "Business Income" means net income (net profit or loss before income taxes) that would have been earned or incurred and continuing normal operating expenses sustained, including payroll.

132.     A "slowdown or cessation" of business activities at the Covered Property is a "suspension" under the policy, for which Continental agreed to pay for loss of Business Income during the "period of restoration" that begins at the time of direct loss.

133.     "Dependent Property" means property operated by others whom the insured depends on to: a) deliver materials or services to the insured or to others for the insured's account, b) accept insured's products or services, c) manufacture products for delivery to insured's customers under contract of sale, or d) attract customers to the insured's business.

134.     COVID-19 caused direct physical loss of or damage to dependent property that

caused suspension of operations at Plaintiff and the other Dependent Property Breach Class members' Covered Properties. Losses caused by COVID-19 thus triggered the Business Income and Extra Expense – Dependent Property provision of Plaintiff and the other Dependent Property Declaratory Judgment Class members' Continental policies.

135.    Plaintiff and the other Dependent Property Declaratory Judgment Class members have complied with all applicable provisions of the policies and yet Continental failed and refused to provide coverage as the policies require.  Instead, on information and belief, Continental made the corporate-level business decision to uniformly deny claims related to COVID-19 without individual bases or investigations, such that the Court can render declaratory judgment regardless of whether particular members of the class have filed a claim.

136.    An actual case or controversy exists regarding Plaintiff and the other Dependent Property Declaratory Judgment Class members' rights and Continental's obligations under the policies to reimburse Plaintiff and the other Dependent Property Declaratory Judgment Class members for the full amount of Business Income and Extra Expense losses incurred by Plaintiffs in connection with stay-at-home orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

137.    Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Dependent Property Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

  a.    The Business Income and Extra Expense losses that Plaintiff and the other Dependent Property Declaratory Judgment Class members suffered as a result of their businesses being suspended and interrupted by the COVID-19 pandemic and the orders issued by civil authorities responding to the pandemic are insured losses under their policies; and

b.  Continental is obligated to pay Plaintiff and the other Dependent Property
Declaratory Judgment Class members for the full amount of the Business Income
and Extra Expense losses incurred and to be incurred in connection with the
orders issues by civil authorities during the period of restoration and the
necessary interruption of their businesses arising from the COVID-19 pandemic.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other Class members,
respectfully requests that the Court enter judgment in their favor and against Defendant as follows:

A.  Entering an order certifying the proposed nationwide Classes, as requested herein,
designating Plaintiff as Class representatives, and appointing Plaintiff's
undersigned attorneys as Counsel for the Classes;

B.  Entering judgment in favor of Plaintiff and the members of the Business Income
Breach Class, the Civil Authority Breach Class, the Extra Expense Breach Class,
the Sue and Labor Breach Class and the Dependent Property Breach Class and
awarding damages for breach of contract in an amount to be determined at trial;

C.  Entering declaratory judgments in favor of Plaintiff and the members of the
Business Income Declaratory Judgment Class, the Civil Authority Declaratory
Judgment Class, the Extra Expense Declaratory Judgment Class, the Sue and Labor
Declaratory Judgment Class and the Dependent Property Declaratory Judgment
Class as follows:

1.  Business Income, Civil Authority, Contamination, Extra Expense, Sue and
Labor and Dependent Property losses incurred in connection with the stay-
at-home orders and the necessary interruption of their businesses stemming
from the COVID-19 pandemic are insured losses under their Policies; and

2.    Defendant is obligated to pay for the full amount of the Business Income, Civil Authority, Extra Expense, Sue and Labor and Dependent Property losses incurred and to be incurred related to COVID-19, the stay-at-home orders, and the necessary interruption of their businesses stemming from the COVID-19 pandemic;

D.   Ordering Defendant to pay both pre- and post-judgment interest on any amounts;

E.   Ordering Defendant to pay attorneys' fees and costs of suit; and

F.   Ordering such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims so triable.  Dated: May 1, 2020

Respectfully submitted,

**BARTLE & MARCUS LLC**

By:   ___/s/ David L. Marcus_____
Matthew V. Bartle  Mo. Bar # 40903
David L. Marcus, Mo. Bar #47846
116 W. 47th Street, Suite 200
Kansas City, Missouri 64112
(816) 256-4614 (telephone)
(816) 222-0534 (facsimile)
mbartle@bmlawkc.com
dmarcus@bmlawkc.com

And

M. Blake Heath, Mo. Bar # 61939
917 W. 43rsd Street, Suite 100
Kansas City, Missouri 64111
(816) 931-0048 (telephone)
(816) 931-4803 (facsimile)
blake@heathinjurylaw.com

ATTORNEYS FOR PLAINTIFF