IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| BBMS, LLC d/b/a ALL A'BLOOM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 20-0353-CV-W-BP |
| ) | |
| CONTINENTAL CASUALTY CO., ) | |
| ) | |
| Defendant. ) | |

**<u>ORDER DIRECTING PLAINTIFF TO FILE SECOND AMENDED COMPLAINT</u>**

Plaintiff filed this suit in May 2020, and its operative pleading is its Amended Complaint. (Doc. 4.) Defendant filed a Motion to Dismiss, and on November 10, 2020, the Court heard oral argument on the motion. During the argument Plaintiff requested leave to file a Second Amended Complaint if the Court concluded that the Amended Complaint fails to state a claim.

The Court has considered the parties' arguments (both written and oral) and the authorities they have cited (both those in their briefing and those submitted after the hearing). The Court now concludes that the Amended Complaint fails to state a claim and grants Plaintiff leave to file a Second Amended Complaint.

**I.  BACKGROUND**

Plaintiff is a limited liability company that operates a flower shop in Jackson County, Missouri. (Doc. 4, ¶ 1.) It purchased an "all risk" insurance policy that contains several Endorsements, (collectively "the Policy"), from Defendant. (*E.g.*, Doc. 1, ¶ 27.) The following provisions are relevant to the issues before the Court:

The Special Property Coverage Form states that the Policy provides coverage "for direct physical loss of or damage to Covered Property at the premises . . . caused by or resulting from a

Covered Cause of Loss." (Doc. 4-1, p. 14.)[1] The phrase "direct physical loss of or damage to" is not defined in the Policy. "Covered Causes of Loss" is defined to include "RISKS OF DIRECT PHYSICAL LOSS unless the loss is" excluded or limited elsewhere in the Policy. (Doc. 4-1, pp. 15-16.)

The Special Property Coverage itself does not provide coverage for lost income, but three Endorsements that extend the Policy's coverage do. The first is a Business Income and Extra Expense Endorsement, ("the Business Income Endorsement"). It provides coverage for lost business income necessitated by the suspension of the insured's business if the suspension is "caused by direct physical loss of damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss." (Doc. 4-1, p. 36.)

The second Endorsement is a Civil Authority Endorsement. It extends the Business Income Endorsement to cover Business Income lost and Extra Expenses incurred due to "action of civil authority that prohibits access to the described premises." (Doc. 4-1, p. 62.) However, not all "actions of civil authority" will qualify. "The civil authority action must be *due to* direct physical loss of or damage to property at locations *other than* described premises, caused by or resulting from a Covered Cause of Loss." (Doc. 4-1, p. 62 (emphasis supplied).)

The final Endorsement relevant to this case is a Dependent Property Endorsement. It extends the Business Income Endorsement to cover Business Income lost and Extra Expenses incurred due to a suspension of the insured's operations "caused by direct physical loss or damage at the premises of a Dependent Property, caused by or resulting from a Covered Cause of Loss." (Doc. 4-1, p. 153.) A "Dependent Property" is defined to include "property operated by other[s]" that the insured depends on to deliver material or services, accept the insured's products or

---

[1] All page numbers are those generated by the Court's CM/ECF system.

services, manufactures products for the insured's customers, or attract customers to the insured's business.  (Doc. 4-1, p. 153.)

Plaintiff alleges that it lost business income in the wake of the emergence of COVID-19.  As the Amended Complaint succinctly states, "COVID-19 is a highly contagious virus that has rapidly spread and continues to spread across the globe.  It can cause severe respiratory distress and even death."  (Doc. 4, ¶ 13.)  It can be spread in a variety of ways, including through the air or by touch; the Centers for Disease Control "has reported that a person can . . . become infected with COVID-19 by touching a surface or object . . . that has the virus on it, and then touching their own mouth, nose or eyes."  (Doc. 4, ¶ 15.)  "COVID-19 has been declared a pandemic by the World Health Organization," (Doc. 4, ¶ 16), and various levels of government – including Jackson County and the State of Missouri – have issued Stay at Home Orders and occupancy restrictions, (collectively, "SHOs"), to slow the virus's spread.  (Doc. 4, ¶¶ 18-23.)  These orders and restrictions have allegedly caused Plaintiff to suffer a loss of income.  Plaintiff alleges that its lost income is covered by the Policy; Defendant disagrees and contends that the Amended Complaint should be dismissed in its entirety.[2]  While the Amended Complaint contains ten counts, the Court need only discuss Counts I, II and V.[3]

Count I is based on the Business Income Endorsement.  It alleges that "COVID-19 caused direct physical loss and damage to Plaintiff's . . . Covered Propert[y], requiring suspension of

---

[2] Plaintiff intends to seek certification of a class of Defendant's policyholders, but that aspect of the case has no bearing on the issues addressed in this Order.

[3] Count III seeks coverage for Extra Expenses under the Business Income Endorsement, so Count III's viability depends on the viability of Count I.  Count IV similarly invokes provisions of the Business Income Endorsement and therefore also depends on Count I.  Counts VI through X seek declarations that the provisions addressed in Counts I through V provide coverage, and are thus largely the same as (and subsumed in) Counts I through V.  Accordingly, Counts III–IV and VI–X do not need to be discussed independently.

operations at the Covered Propert[y]. Losses caused by COVID-19 thus triggered the Business Income provision of" the Policy. (Doc. 4, ¶ 56.)

Count II is based on the Civil Authority Endorsement. It alleges that "[t]he stay-at-home orders triggered the Civil Authority provision under" the Policy. (Doc. 4, ¶ 64.)

Count V is based on the Dependent Property Endorsement. It alleges that "COVID-19 caused direct physical loss or damage to dependent property that caused suspension of operations at" Plaintiff's business, and "thus triggered the Dependent Property" Endorsement. (Doc. 4, ¶ 94.) Elsewhere, the Amended Complaint generally alleges that "[t]he virus and stay-at-home orders and restrictions have resulted in losses due to . . . closures of dependent businesses." (Doc. 4, ¶ 24.) It also alleges that Plaintiff has suffered "a supply shortage due to many flowers used in its business being grown in the states of California and Washington and the country of Mexico" and that "weddings, funerals, and proms have been canceled due to COVID-19 and the" SHOs. (Doc. 4, ¶ 25.)

Defendant's primary argument is that the Amended Complaint does not describe any business – including Plaintiff's – that suffered a "direct physical loss . . . or damage," in part because the SHOs do not satisfy that requirement. Plaintiff disagrees and argues that the Amended Complaint alleges that its business, as well as others, suffered direct physical loss or damage. In brief summary, Plaintiff argued at the hearing that the SHOs combined with the virus's existence constitute direct physical loss or damage because it "lost" the use of its business premises. The Court resolves the parties' arguments below.

## II. DISCUSSION

Under Rule 12(b)(6), the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[ ]." *Stodghill v. Wellston*

*School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008); *see also Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted). A claim is facially plausible if it allows the reasonable inference that the defendant is liable for the conduct alleged. *E.g., Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Horras v. American Capital Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013). In making this evaluation, the Court is limited to a review of the Complaint, exhibits attached to the Complaint, and materials necessarily embraced by the Complaint. *E.g., Mattes v. ABC Plastics, Inc.,* 323 F.3d 695, 697 n.4 (8th Cir. 2003).

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

### A.  Count I – Business Income Endorsement

"The interpretation of an insurance policy is a question of law, to which Missouri courts apply general contract-interpretation principles." *Gohagan v. Cincinnati Ins. Co.*, 809 F.3d 1012, 1015 (8th Cir. 2016) (*citing McCormack Baron Mgmt. Servs., Inc. v. Am. Guarantee & Liab. Ins. Co.*, 989 S.W.2d 168, 171 (Mo. 1999) (en banc)). "In disputes over the meaning of contract language, the key is whether the contract language is ambiguous or unambiguous." *Id.* (cleaned

5

up.) "A contract is ambiguous if its language is *reasonably* susceptible to different interpretations." *Wilson v. General Mortg. Co.*, 638 S.W.2d 821, 823 (Mo. Ct. App. 1982) (citations omitted; emphasis supplied); *see also Mendota Ins. Co. v. Ware*, 348 S.W.3d 68, 71-72 (Mo. Ct. App. 2011) (ambiguity requires two or more reasonable interpretations of the relevant provision). Interpreting an insurance policy requires that "we ascertain the intention of the parties and . . . give effect to that intention." *Id.* "The intention of the parties is presumptively expressed by the plain and ordinary meaning of the policy's provisions, which we read in the context of the policy as a whole." *Id.* But, if an insurance policy's language is ambiguous, the ambiguity is to be construed in favor of the insured. *E.g., Jordan v. Safeco Ins. Co. of Illinois*, 741 F.3d 882, 885 (8th Cir. 2014) (citing *Manner v. Schiermeier*, 393 S.W.3d 58, 65 (Mo. 2013) (en banc)).

As stated earlier, the Policy does not define the phrase "direct physical loss." And the Eighth Circuit, applying Missouri law, has held that the phrase is ambiguous. *Hampton Foods Inc. v. Aetna Cas. & Sur. Co.*, 787 F.2d 349, 351-52 (8th Cir. 1986). This does not mean, however, that the phrase has been interpreted to mean that policies employing that language provide coverage for any event that causes a suspension of business operations and a resulting loss of business income. *Id.* at 352 ("We agree . . . that not every risk of loss is covered by this policy."). A survey of cases, both from Missouri and elsewhere, confirms that the phrase requires some physical event or force on, in or affecting the property in question and not mere "loss of use." Ruling otherwise would render the word "physical" a nullity.

Thus, for instance, in *Hampton Foods*, "plaster fell from the ceiling of the building and the building evidenced other signs that it was in imminent danger of collapse." *Hampton Foods*, 787 F.2d at 351. Therefore, the insured "suffered direct, concrete and immediate loss due to extraneous physical damage to the building. . . . The loss in value of Hampton's inventory necessitated by the

6

sudden evacuation, and the destruction of its business equipment upon the building's collapse, constitute 'loss or destruction to the property insured . . . resulting from all risks of direct physical loss.'" *Id.* at 352 (second ellipses in original). In *Cincinnati Ins. Co. v. German St. Vincent Orphan Ass'n, Inc.*, the Missouri Court of Appeals held that the release of asbestos into a building constituted "direct physical loss or damage." 54 S.W.3d 661, 666 (Mo. Ct. App. 2001). In both cases, an event caused damage to, physical contact with, or had a physical impact on the insured premises.[4]

On the other hand, events that do not have a direct physical effect on the insured property will not give rise to coverage, even if they interrupt business operations or deny access to the premises. For instance, in *Pentair, Inc. v. American Guarantee & Liability Ins. Co.*, 400 F.3d 613 (8th Cir. 2005), an earthquake disrupted power to two factories in Taiwan that supplied products to the insured. The insured argued that the factories suffered "direct physical loss" because of their inability to function due to a lack of electricity, even though they had not suffered physical damage in the earthquake. The Eighth Circuit (applying Minnesota law) held that they had not, explaining that mere loss of use or function is not "direct physical loss or damage" and in so doing differentiated cases in which loss of use was the result of physical damage to or contamination in the premises. *Pentair*, 400 F.3d at 616. The Eighth Circuit applied similar reasoning in *Source Food Tech., Inc. v. United States Fidelity & Guaranty Co.*, 465 F.3d 834 (8th Cir. 2006). There, the property in question was beef products that could not be transported from Canada into the United States due to an embargo imposed because of concerns about mad cow disease. Critically, "[t]he parties agree[d] that there [was] no evidence that the [insured's] beef product was

---

[4] At oral argument, Plaintiff noted that in *German St. Vincent* the Health Department required the insured to stop using the first floor of the premises due to the asbestos. However, the Missouri Court of Appeals did not characterize the Health Department's order itself as constituting direct physical loss or damage.

contaminated by mad cow disease." *Source Food*, 465 F.3d at 835. Because the insured's beef was not contaminated, the Eighth Circuit held that it had not experienced "direct loss or damage."

> Although Source Food's beef product in the truck could not be transported to the United States due to the closing of the border to Canadian beef products, the beef product on the truck was not—as Source Foods concedes—physically contaminated or damaged in any manner. To characterize Source Food's inability to transport its truckload of beef product across the border and sell the beef product in the United States as direct physical loss to property would render the word "physical" meaningless.

*Id*. at 838.

The COVID-19 pandemic has understandably generated numerous suits by policyholders seeking coverage for losses, and many of those suits involve policies with the same language that is at issue here. While none of the cases that have been decided are binding on this Court, the weight of authority demonstrates that stay at home orders and the existence of COVID-19, alone, does not qualify as "direct physical loss of or damage to" property. Cases reaching this conclusion include:

- *Real Hosp., LLC v. Travelers Cas. Ins. Co. of Am.*, 2020 WL 6503405 (S.D. Miss. Nov. 4, 2020) – The Court held that the language required the property to be "physically lost" or "physically damaged," and the existence of stay at home orders did not qualify as either. 2020 WL 6503405 at *6-7.

- *Water Sports Kauai, Inc. v. Fireman's Fund Ins. Co.*, 2020 WL 6562332 (N.D. Cal. Nov. 9, 2020) – The Court rejected the insured's argument that closing business due to stay at home orders or to avoid risk of contamination qualifies as "direct physical loss" or "physical damage." 2020 WL 6562332 at *4-6.

- *Diesel Barbershop, LLC v. State Farm Lloyds*, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020) – The Court held that a business that was ordered to be closed did not suffer direct

8

Case 4:20-cv-00353-BP   Document 36   Filed 11/30/20   Page 8 of 12

physical loss or physical damage because there was no tangible change to or effect on the property, and thus nothing "physical" occurred. 2020 WL 4724305 at *5.

- *Hillcrest Optical, Inc. v. Continental Casualty Co.*, 2020 WL 6163142 (S.D. Ala. Oct. 21, 2020) – The Court held that a stay at home order did not cause physical damage or loss because "Plaintiff's loss of usability did not result from an immediate occurrence which tangibly altered its property – the Order did not immediately cause some sort of tangible alteration to Plaintiff's office." 2020 WL 6163142 at *7.

- *West Coast Hotel Mgt., LLC v. Berkshire Hathaway Guard Ins. Co.*, 2020 WL 6440037 (C.D. Cal. Oct. 27, 2020) – The Court held that the plaintiffs did not "claim that any property has undergone a physical alteration or needs to be 'repaired, rebuilt, or replaced,'" that they were "not in possession of their hotels and the property contained within them," or allege facts demonstrating that "there was physical damage to their property as a result of the physical nature of COVID-19." 2020 WL 6440037 at *4.

These are just some of the federal cases addressing this issue in the context of COVID-19 and related stay at home orders that reach this conclusion. There are also numerous decisions from state courts reaching the same conclusion.

Applying these principles to this case demonstrates that the Amended Complaint does not state a claim. The Amended Complaint does not allege that there was a "physical loss of" or "physical damage to" Plaintiff's business; in fact, there are no allegations about anything "physical" in connection with Plaintiff's business at all. And the existence of the SHOs appears to have no bearing on the matter whatsoever: loss of use alone is insufficient to satisfy this provision and, like the embargo in *Source Food* and the COVID-related orders in cases such as

*Water Sports Kauai*, *Diesel Barbershop*, and *Hillcrest Optical*, the SHOs in this case have no physical effect on property – direct or otherwise.

In contending that the Amended Complaint is sufficient Plaintiff relies principally on two cases. The first is an unpublished decision from the Eastern District of Missouri in *Mehl v. Travelers Home & Marine Ins. Co.*, No. 4:16-CV-1325-CDP. In that case, the plaintiff alleged that his house became infested with brown recluse spiders and argued that he had suffered a "direct physical loss," at least for the period of time it took to remove the infestation. The insurance company sought dismissal arguing that "'direct physical loss' means actual physical damage and because there is no dispute that the insured residence suffered no 'physical damage' on account of the spiders," the plaintiff's claim should be dismissed. (Doc. 24-1, p. 2.) The Eastern District declined to dismiss, but this decision does not aid Plaintiff for two reasons. First, the spiders were physically in the house – much like the asbestos fibers were physically in the building in *German St. Vincent*. But here, Plaintiff has not alleged that there was any physical infestation of its business. Second, *Mehl* relied in part on the policy's definition of "property damage." The Policy in this case also defines "property damage," (Doc. 4-1, p. 118), but it does so in connection with Plaintiff's liability coverage. The Business Income Endorsement does not utilize the phrase "property damage," so the definition of that phrase does not dictate the Business Income Endorsement's coverage.

The second case Plaintiff points to is *Studio 417, Inc. v. Cincinnati Ins. Co.*, 2020 WL 4692386 (W.D. Mo. Aug. 12, 2020). Like this case, *Studio 417* involved a claim for coverage arising from the pandemic. However, there are significant differences between the Amended Complaint in this case and the operative pleading in *Studio 417*. In that case, the plaintiff alleged that the virus was present in and on its premises. *Studio 417*, 2020 WL 4692386 at *6. This

allegation differentiates *Studio 417* from this case, as well as the other cases cited earlier. Like the plaintiffs in those cases – and in contrast to the plaintiff in *Studio 417* – Plaintiff relies on (1) the mere existence of COVID-19 and (2) the SHOs. As outlined above, these allegations are insufficient.

Accordingly, the Court concludes that the Amended Complaint fails to allege facts that plausibly demonstrate that there was "direct physical loss of or damage to" Plaintiff's business premises and therefore Count I fails to state a claim. However, the Court cannot say – depending on the facts – that it is legally impossible for Plaintiff to state a claim under the Business Income Endorsement. Therefore, the Court will grant Plaintiff's oral request for that opportunity.

### B.  Count II – Civil Authority Endorsement

The Court also concludes that Count II presently fails to state a claim. At the outset, the Court observes that the SHOs are not the type of "civil authority" described in the Civil Authority Endorsement. Coverage applies when a civil authority prohibits Plaintiff from accessing *its* premises "*due to* direct physical loss of or damage to property at locations *other than*" Plaintiff's premises. (Doc. 4-1, p. 62.)  Plaintiff does not allege that any location other than its premises suffered direct physical loss or damage. Moreover, Plaintiff does not allege that the SHOs were issued "due to" that loss or damage. As with Count I, Plaintiff will be given an opportunity to amend Count II.

### C.  Count V – Dependent Property Endorsement

Finally, the Court also concludes that Count V presently fails to state a claim. The Dependent Property Endorsement applies when Plaintiff's operations are suspended due to "direct physical loss or damage at the premises of a Dependent Property." (Doc. 4-1, p. 153.)  Plaintiff has not identified a Dependent Property (as that phrase is defined in the Policy) that suffered a

11

"direct physical loss or damage at [its] premises," nor has Plaintiff alleged that it suspended its operations due to any such physical loss or damage.  Plaintiff's general allegation that "[t]he virus and stay-at-home orders and restrictions have resulted in losses due to . . . closures of dependent businesses," (Doc. 4, ¶ 24), does not make this claim viable because it is a "threadbare recital" of the claim that *Iqbal* counsels is insufficient.  *Iqbal,* 556 U.S. at 678.  Nonetheless, the Court cannot say it is impossible for Plaintiff to amend Count V so that it states a claim, so Plaintiff's request for leave to do so will be granted.

### III.  CONCLUSION

For the reasons state above, the Court concludes that the existence of COVID-19 and the related SHOs do not constitute "direct physical loss of or damage to" business premises.  As this is the theory relied upon by Plaintiff, the Amended Complaint fails to state a claim for which relief can be granted.  However, Plaintiff will be granted an opportunity to file a Second Amended Complaint.  Plaintiff shall have fourteen days to electronically file its Second Amended Complaint, at which point the Motion to Dismiss will be moot.

**IT IS SO ORDERED.**

Date:  November 30, 2020

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
UNITED STATES DISTRICT COURT